UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

FAHS CONSTR. GROUP, INC.,

                     Plaintiff,

v.                                                        3:10-CV-0129
                                                      (GTS/DEP)
MICHAEL GRAY; JOHN VAN AUKEN;
TIMOTHY FARRELL; JOHN DOE NO. 1;
JOHN DOE NO. 2; JOHN DOE NO. 3;
JOHN DOE NO. 4; and JOHN DOE NO. 5,

                     Defendants.
_____

APPEARANCES:                                              OF COUNSEL:

HINMANN, HOWARD & KATTELL, LLP         ALBERT J. MILLUS JR., ESQ.
  Counsel for Plaintiff
700 Security Exchange Building
80 Exchange Street
P.O. Box 5250
Binghamton, New York 13902-5250

HON. ERIC T. SCHNEIDERMAN               ADAM W. SILVERMAN, ESQ.
Attorney General for the State of New York    Assistant Attorney General
  Counsel for Defendants
The Capital
Albany, New York 12224-0341

HON. GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      Currently before the Court in this civil rights action, filed by Fahs Construction Group, Inc. ("Plaintiff"), is a motion to dismiss for failure to state a claim filed by Michael Gray, John Van Auken, and Timothy Farrell ("Defendants"). (Dkt. No. 13.) For the reasons set forth below, Defendants' motion is granted in part and denied in part; and certain of Plaintiff's claims are dismissed without prejudice.

I.      RELEVANT BACKGROUND

     A.      **Plaintiff's Claims**

Generally, liberally construed, Plaintiff's Complaint alleges that, between mid-August 2003 and September 2009, Defendants–eight current or former employees of the New York State Department of Transportation ("NYSDOT")–violated its civil rights under 42 U.S.C. § 1983 and the United States Constitution.  (*See generally* Dkt. No. 1 [Plf.'s Compl.].)  More specifically, Plaintiff, a general construction contractor that provides roadway paving and related services, alleges that, sometime in 2003, while successfully pursuing a claim for $900,000 from the NYSDOT based on work performed for the NYSDOT in Owego, New York (the "Owego Project"), Plaintiff caused great embarrassment to John Grady, a NYSDOT official.  (*Id.*)  Plaintiff further alleges that, as a result, Defendants, at least one of whom worked for John Grady at the NYSDOT, subjected Plaintiff and its employees to a discriminatory work environment at another Thruway construction site, pursuant to a different contract, the "Fahs Contract," and further discrimination during the Fahs Contract "closeout period" (i.e., the period of time after Plaintiff's road repair work at the construction site was complete but before the contract was "finalized").  (*Id.*)  Plaintiff also alleges that another contractor, Lancaster Development, Inc. ("Lancaster"), which was performing similar work at an adjoining site on the Thruway, was treated more favorably than was Plaintiff by Defendants before Plaintiff completed its onsite work in September 2005.  (*Id.*)

Based on these allegations, Plaintiff's Complaint asserts the following three claims: (1) violation of its right to equal protection under the Fourteenth Amendment against all Defendants; (2) violation of its right to freedom from retaliation under the First Amendment against

Defendant Gray; and (3) conspiracy to violate its rights to equal protection and freedom from retaliation under the First and Fourteenth Amendments against all Defendants. (*Id*.) Plaintiff also asserts a claim for entitlement to punitive damages based on Defendants acting "outrageously, with malice, and with specific intent to deprive [Plaintiff] of its constitutional rights." (*Id*.)[1] Familiarity with the remaining factual allegations supporting these claims in Plaintiff's Complaint is assumed in this Decision and Order, which is intended primarily for review by the parties. (*Id*.)

### B. Defendants' Motion

Generally, in support of their motion dismiss, Defendants argue that Plaintiff's claims, which were filed on February 3, 2010, are barred by the three-year statute of limitations governing claims arising under 42 U.S.C. § 1983. (*See generally* Dkt. No. 13, Attach. 1 [Defs.' Memo. of Law].) More specifically, Defendants argue that (1) the conduct that occurred during the onsite performance of the Fahs Contract is outside of the limitations period, and (2) the conduct that occurred after the onsite work was completed (some of which falls within the limitations period) is not actionable. (*Id*.)

---

[1] The Court notes that it does not liberally construe the allegations of Plaintiff's Complaint as giving rise to a substantive due process claim because a challenge to unequal and/or unfavorable treatment based on the filing of a prior complaint clearly invokes the Equal Protection Clause of the Fourteenth Amendment. As a result, the Court "must assess . . . plaintiff's claims under th[ose] explicit provision[s] and 'not the more generalized notion of 'substantive due process.'" *Conn v. Gabbert*, 526 U.S. 286, 293 (1999) (quoting *Graham v. Connor*, 490 U.S. 386, 395 [1989]); *see also Velez v. Levy*, 401 F.3d 75, 99 n.24 (2d Cir. 2005) ("not[ing] that, while the board members' alleged conduct is certainly both outrageous and shocking, it cannot-insofar as its shocking character depends on the overtone of political retaliation-support a substantive due process claim").

In response, Plaintiff argues as follows: (1) because Defendants' actionable behavior was continuous, the events that occurred outside of the limitations period are actionable pursuant to continuing-violation doctrine; (2) Defendants cannot assert the affirmative defense that the action is barred by the statute of limitations in a pre-answer motion to dismiss; (3) Plaintiff is entitled to discovery in connection with the statute-of-limitations issue; and (4) in the event that the Court concludes that the allegations in the Complaint "are insufficiently detailed," Plaintiff should be given leave to amend its Complaint. (*See generally* Dkt. No. 15 [Plf.'s Reply Memo. of Law].)

In their reply, Defendants argue, *inter alia*, as follows: (1) the continuing-violation doctrine should not be applied to Plaintiff's claims; (2) Plaintiff fails to allege facts plausibly suggesting a constitutional violation within the statute of limitations; and (3) resolution of the statute-of-limitations question does not require discovery. (*See generally* Dkt. No. 17 [Defs.' Reply Memo. of Law].)

## II.     RELEVANT LEGAL STANDARDS

### A.     Legal Standard Governing Motions to Dismiss for Failure to State a Claim

"A motion to dismiss on the basis that an action is barred by the statute of limitations is analyzed under Federal Rule of Civil Procedure 12(b)(6), not 12(b)(1)." *Garner v. DII Indus., LLC*, 08-CV-6191, 2010 WL 456801, at *1 (W.D.N.Y. Feb. 4, 2010) (citing *Ghartey v. St John's Queens Hosp.*, 869 F.2d 160, 162 [2d Cir.1989]). Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing motions to dismiss for failure to state a claim, the Court will not recite that well-known legal standard in this Decision and Order, but will direct the reader to the Court's recent

decision in *Wade v. Tiffin Motorhomes, Inc.*, 05-CV-1458, 2009 WL 3629674, at *3 (N.D.N.Y. Oct. 27, 2009) (Suddaby, J.), which accurately recites that legal standard.

###    B.    Legal Standard Governing Defendants' Challenge to Plaintiff's Claims

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards governing Defendants' challenge to Plaintiff's claims in this action, the Court will not recite, in their entirety, that legal standard in this Decision and Order, which (again) is intended primarily for review by the parties. (*See* Dkt. No. 13, Attach. 1 [Defs.' Memo. of Law]; Dkt. No. 15 [Plf.'s Reply Memo. of Law]; Dkt. No. 17 [Defs.' Reply Memo. of Law].)

## III.   ANALYSIS

As stated above in Part I.B. of this Decision and Order, Defendants seek the dismissal of Plaintiff's claims on the grounds that the claims are time barred. In response, Plaintiff argues that (1) because Defendants' actionable behavior was continuous, the events that occurred outside of the limitations period are actionable pursuant to the continuing-violation doctrine, (2) Defendants cannot assert the affirmative defense that the action is barred by the statute of limitations in a pre-answer motion to dismiss, (3) Plaintiff is entitled to discovery in connection with the statute-of-limitations issue, and (4) in the event that the Court concludes that the allegations in the Complaint "are insufficiently detailed," Plaintiff should be given leave to amend its Complaint.

As an initial matter, the Court notes that "a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (citing, *inter alia*,

*McKenna v. Wright*, 386 F.3d 432, 436 [2d Cir. 2004]); *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss. Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. . . ."). Here, Plaintiff has provided dates in its Complaint regarding the incidents that give rise to its claims. As a result, the Court rejects Plaintiff's second argument that Defendants may not raise their statute-of-limitations defense in their pre-answer motion to dismiss.

With that said, although the statute of limitations governing a claim brought under 42 U.S.C. § 1983 is three years from the date that "the plaintiff knows or has reason to know of the harm[,] . . . [w]hen the plaintiff brings a Section 1983 claim challenging a discriminatory policy, 'the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (quoting *Cornwell v. Robinson*, 23 F.3d 694, 703 [2d Cir. 1994]). "To trigger the continuing violation doctrine when challenging discrimination, the plaintiff must allege both [1] the existence of an ongoing policy of discrimination[,] and [2] some non-time-barred acts taken in furtherance of that policy." *Shomo*, 579 F.3d at 181 (internal quotations omitted); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (holding that "discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire . . . are not actionable if time barred, even when they are related to acts alleged in timely filed charges"). It should be noted that "the doctrine cannot be applied when the plaintiff challenges conduct that is a discrete unlawful act." *Shomo*, 579 F.3d at 181.

"As a general rule, courts in the Second Circuit have viewed continuing violation arguments with disfavor." *Curtis v. Airborne Freight Corp.*, 87 F. Supp. 2d 234, 244 (S.D.N.Y. 2000); *accord Bernstein v. MONY Group, Inc.*, 228 F. Supp. 2d 415, 418 (S.D.N.Y. 2002); *Bracci v. N.Y.S. Dept. of Corr. Serv.*, 01-CV-1300, 2005 WL 2437029, at *7 (N.D.N.Y. 2005) (McAvoy, J.); *Stouter v. Smithtown Cent. Sch. Dist.*, 687 F. Supp. 2d 224, 230 (E.D.N.Y. 2010). As a result, "only 'compelling circumstances will warrant application of the exception to the statute of limitations.'" *Quadrozzi Concrete Corp. v. City of New York*, 03-CV-1905, 2004 WL 2222164, at *8 (S.D.N.Y. 2004) (quoting *McMillan v. City of New York*, 95-CV-5459, 1997 WL 589019, at *3 [S.D.N.Y. Sept. 19, 1997], *aff'd*, 152 F.3d 919 [2d Cir. 1998]).

In this case, Plaintiff alleges that Defendants had a policy of discrimination that began during the construction phase of the Fahs Contract (from approximately mid-August 2003 to September 2005), and continued through February 3, 2007, three years before the filing of Plaintiff's Complaint on February 2, 2010. (*See generally* Dkt. No. 1 [Plf.'s Compl.].) However, the only events alleged in Plaintiff's Complaint that occurred within the limitations period are the following: (1) Defendant Gray's refusal, sometime after May 5, 2008, to process payments awarded to Plaintiff by a New York State Dispute Review Board, "in continuation of the conspiracy and deprivation of [Plaintiff's] rights, which resulted in Plaintiff receiving "approximately $125,000 less than the Chief Engineer had agreed to [award]"; and (2) Defendant Gray's continued refusal, as of September 2009, to process payments awarded to Plaintiff, which would enable it to finalize the Fahs Contract. (Dkt. No. 1, ¶¶ 67-69 [Plf.'s Compl.].)[2]

---

[2] The Court notes that the payments awarded to Plaintiff by the New York State Dispute Review Board arise from the "35 claims for approximately $5.4 million for additional expenses, including rescission of the liquidated damages for the alleged 'late' completion [of the project]," which Plaintiff filed after completing the project that gave rise to the Fahs Contract in September 2005. (Dkt. No. 1, at ¶¶ 63-64.) As of September 2009, the Fahs Contract had still not been finalized. (*Id.* at ¶ 69.)

In addition, Plaintiff has attached to its response memorandum of law the affidavit of Daniel Purtell, who was the General Foreman during the construction phase of the Fahs Contract and project manager after the completion of the onsite work on the Fahs Contract. (Dkt. No. 15, Attach. 3.)  In his affidavit, Mr. Purtell states that additional events occurred within the limitations period.  (*Id*. at ¶ 9.)  However, because Mr. Purtell's affidavit was not attached to the Complaint or incorporated by reference in Plaintiff's Complaint, and because the Court declines to convert Defendants' motion as one for summary judgment, the Court declines to consider Mr. Purtell's affidavit in deciding Defendants' motion to dismiss.  *See, e.g.*, *Procapui-Productores de Camaroes De Icapui Ltda. v. Layani*, 07-CV-6627, 2008 WL 3338199, at *2 (S.D.N.Y. Jan. 11, 2008) ("In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken. Thus, to the extent that Plaintiff has submitted affidavits and other materials in connection with its opposition to the motion to dismiss that are not incorporated by reference in the Complaint, the Court may not consider these documents in connection with its decision on the motion presently before it.").

Nonetheless, accepting the allegations in Plaintiff's Complaint as true, as the Court must at the pleading stage, the Court now turns to each of Plaintiff's claims to determine if the timely allegations plausibly suggest an ongoing policy of discrimination such that Plaintiff may invoke the continuing-violation doctrine.

### A. Applicability of Continuing Violation Doctrine

#### 1. Plaintiff's Equal Protection Claim

The first of Plaintiff's claims alleges that Defendant violated its right to equal protection by treating it differently than another similarly situated construction contractor. (Dkt. No. 1 [Plf.'s Compl.].) Because Plaintiff is not a member of a protected class, its equal protection claim is brought under a class-of-one theory.[3] In order to succeed on a class-of-one claim, a plaintiff must establish that

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

*Clubside, Inc.*, 468 F.3d at 159 (noting that "[g]enerally, whether parties are similarly situated is a fact-intensive inquiry"). In addition, in *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591 (2008), the Supreme Court held that "class of one" claims cannot challenge "forms of state action . . . which by their nature involve discretionary decision making." *Catcove Corp. v. Patrick Heaney*, 685 F. Supp.2d 328, 333 (E.D.N.Y. 2010) (quoting *Engquist*, 553 U.S. at 603.) As a result, "a plaintiff who proceeds on a class of one claim must [also] allege that 'the differential treatment resulted from non-discretionary state action.'" *Catcove Corp.*, 685 F. Supp.2d at 333.

---

[3] The Second Circuit has considered the merits of a class-of-one equal protection claim brought by a corporation. *See Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (hearing a case involving a corporation suing a town on class of one claim).

Here, Plaintiff has alleged facts plausibly suggesting that a competitor, Lancaster, was similarly situated to Plaintiff, yet was treated more favorably by Defendants during its onsite construction work, than was Plaintiff. More specifically, Plaintiff has alleged, *inter alia,* as follows: (1) "at some point during 2004[,] NYSDOT awarded [a] contract to . . . Lancaster for the reconstruction of the New York Thruway from Exit 1 to Exit 5, the portion of the highway between the . . . tollbooths and the commencement of the Fahs project at Exit 5A"; (2) "Lancaster is a major paving contractor in the Albany area"; (3) "[a]s a result of the award of the Lancaster Contract . . ., both [Plaintiff] and Lancaster were working on the section of Interstate 90 between the Interstate 87 tollbooths and the Interstate 787 interchange during 2005"; (4) "[u]pon information and belief, the general specifications for the Lancaster Contract were the same as the specifications for the Fahs Contract"; (5) "NYSDOT allowed Lancaster to use cones for traffic control, whereas [Plaintiff] was required to use barrels[,]" which caused Plaintiff to endure additional time expenses and "exposure to danger"; (6) NYSDOT denied Plaintiff's subsequent request to use cones instead of barrels; (7) "NYSDOT also allowed Lancaster to divert traffic to side roads and close the entire East bound or West bound section of the Thruway at night and on weekends[, which] greatly facilitated the progress of the Lancaster work and virtually eliminated the dangerous traffic conditions [Plaintiff] was forced to endure throughout its project"; (8) "[u]pon information and belief, NYSDOT required only a token rebate from Lancaster as a result of the lane closure measures, notwithstanding significant savings"; (9) "[u]pon information and belief, the land closures were the result of 'value engineering' and at least nine conceptual partnering meetings between NYSDOT and Lancaster, which NYSDOT refused to enter into with [Plaintiff]"; (10) "[i]n general, . . . Lancaster was able to engage in

10

many practices that aided its construction efforts, whereas [Plaintiff] was prohibited from engaging in the same practices"; and (11) "[Plaintiff] was fined for minor variations from specifications and maintenance and protection of traffic requirements, while the same and even blatant variations on the part of Lancaster were excused."  (Dkt. No. 1 [Plf.'s Compl.].)

The problem is that Plaintiff has alleged facts plausibly suggesting that the difference in treatment occurred only in 2005–outside of the limitations period.  Plaintiff's equal protection claim arises from the disparate treatment that it received compared to Lancaster, with regard to specific issues faced by *both* Plaintiff and Lancaster before Plaintiff completed its onsite work under the Fahs Contract in 2005.  The fact that Plaintiff later received what it perceived to be unfavorable treatment from the NYSDOT and Defendant (in the form of needing to file claims and then not having them processed) cannot be deemed to constitute continuing treatment "disparate" to treatment received by Lancaster if Lancaster never found itself in the same situation (as the situation in which Plaintiff found itself).  Simply stated, Plaintiff has failed to allege facts plausibly suggesting that, after Lancaster had completed its onsite work on the Lancaster Contract, Lancaster submitted claims to NYSDOT that were timely addressed.  Nor is there any allegation that Lancaster had a dispute submitted to a non-binding, three-member Dispute Review Board, whose finding was entirely adopted by the NYSDOT.

For these reasons, the Court rejects Plaintiff's argument that the continuing-violation doctrine renders timely its equal protection claim.  As a result, Plaintiff's equal protection claim is dismissed without prejudice as time barred, pursuant to Fed. R. Civ. P. 12(b)(6).

### 2. Plaintiff's First Amendment Freedom-from-Retaliation Claim Against Defendant Gray

The second of Plaintiff's claims alleges that Defendant Gray retaliated against Plaintiff in violation of its right to freedom from retaliation. (Dkt. No. 1, ¶¶ 67-69, 73-74.)[4]

"To state a claim for retaliation, a plaintiff must plead facts plausibly suggesting that: (1) the speech or conduct at issue was 'protected'; (2) the defendants took 'adverse action' against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action-in other words, that the protected conduct was a 'substantial or motivating factor' in the defendants' decision to take action against the plaintiff." *Brown v. Brown*, 08-CV-0209, 2010 WL 1186569, at *5 (N.D.N.Y. Jan. 19, 2010) (Lowe, M.J.) (citing, *inter alia*, *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 [1977]).[5]

In support of its retaliation claim, Plaintiff alleges, *inter alia*, as follows: (1) before being awarded the Fahs Contract, it submitted a claim against the NYSDOT for the "Owego Project" in the amount of $900,000; (2) in the course of pursuing that claim, Plaintiff came into possession of a memorandum written by John Grady, an employee of the NYSDOT, "which was critical of the NYSDOT and favorable to the claim asserted by [Plaintiff]"; (3) notwithstanding this memorandum, John Grady opposed Plaintiff's claim during a meeting in or around the spring of 2003, "whereupon [Plaintiff's] president, Maynard Fahs, produced the memorandum to

---

[4] The Supreme Court recently reaffirmed that "First Amendment protection extends to corporations." *Citizens United v. Fed. Election Comm'n*, 130 S.Ct. 876, 899-900 (2010).

[5] The Court notes that, "where the retaliation is alleged to have caused an injury separate from any chilling effect, such as a job loss or demotion, an allegation as to a chilling effect is not necessary to state a claim." *Puckett v. City of Glen Cove*, 631 F. Supp.2d 226, 239 (E.D.N.Y. 2009) (citing *Morrison v. Johnson*, 429 F.3d 48, 51 [2d Cir. 2005]).

rebut John Grady's arguments[, which] . . . embarrassed John Grady and caused him to take great offense against [Plaintiff]"; (4) as a result, Defendants subjected Plaintiff (and its employees) to discriminatory treatment at its next construction job with the NYSDOT, the Fahs Contract; (5) after completing its onsite work on the Fahs Contract, Plaintiff filed 35 claims for additional expenses in the amount of $5.4 million; (6) the dispute regarding these claims was submitted to a non-binding Dispute Review Board, who found in favor of Plaintiff in the amount of $1.8 million; and (7) Defendants' discriminatory treatment has "extended into at least 2009" through Defendant Gray's interference with the finalization of the Fahs Contract. (*See generally* Dkt. No. 1.)

As an initial matter, the Court finds that Plaintiff has alleged facts plausibly suggesting that it was engaged in protected activity when it filed a claim against the NYSDOT for $900,000 in 2003. The Court also finds that Plaintiff has alleged facts plausibly suggesting that it was engaged in protected activity when, sometime between September 2005 and March 2006, it filed the 35 claims for $5.4 million in additional expenses after completing its work under the Fahs Contract. Moreover, the Court finds that Plaintiff has alleged facts plausibly suggesting that Defendant Gray engaged in adverse action as recently as September 2009, which has interfered with Plaintiff's ability to finalize the Fahs Contract. Finally, Plaintiff has alleged facts plausibly suggesting that the adverse action that Defendant Gray subjected it to through 2009 was casually connected to the protected activity that Plaintiff engaged in by filing a claim regarding the Owego Project, and/or by filing the 35 claims after the completion of the onsite work under the Fahs Contract. In other words, Plaintiff has alleged with sufficient particularity that Defendant Gray's adverse actions as recently as 2009 are casually connected to Plaintiff's engagement in

protected activity in 2003, and in 2005. As a result, the Court finds that Plaintiff has alleged facts plausibly suggesting a claim of retaliation against Defendant Gray.

Having said that, the Court rejects Plaintiff's argument that the continuing-violation doctrine renders timely Plaintiff's retaliation claim against the remaining Defendants. Without more, Plaintiff's conclusory allegation that Defendant Gray's actions in 2009 were carried out pursuant to a policy is not enough to render timely the actions taken by the remaining Defendants in 2005. Simply put, even assuming that Plaintiff had alleged facts plausibly suggesting that Defendants had a policy of retaliating against Plaintiff during Plaintiff's onsite work under the Fahs Contract, Plaintiff has failed to allege facts plausibly suggesting that this policy continued after the completion of Plaintiff's onsite work in September 2005.

The Court acknowledges that Plaintiff has alleged facts plausibly suggesting that, on March 22, 2006, Defendants Farrell and VanAuken expressed their opinion to a fellow NYSDOT employee, "M.O. White," that paying Plaintiff on its claims, which the NYSDOT disputed, "would be illegal." (Dkt. No. 1 at ¶ 65.) However, this allegation does not plausibly suggest an ongoing policy of retaliating against Plaintiff for two reasons. First, Plaintiff has failed to allege facts plausibly suggesting that the statement by Defendants Farrell and VanAuken was based on a continuing policy of discrimination. (*See generally*, Dkt. No. 1.) For example, Plaintiff has failed to allege that only Defendants Farrell and VanAuken (and no other employee of the NYSDOT unnamed as a Defendant in this action) made this statement. (*Id*.) Second, the alleged statement does not constitute sufficiently serious adverse action. Rather, it is more akin to the expression of an opinion (which has not been even alleged to be entirely incorrect).

For these reasons, only Plaintiff's retaliation claim against Defendant Gray survives Defendants' motion to dismiss.

### 3. Plaintiff's Claim of Conspiracy to Violate Its Rights to Equal Protection and Freedom from Retaliation Against All Defendant

The third of Plaintiff's claims alleges that Defendants conspired to retaliate against Plaintiff in violation of its rights to equal protection and freedom from retaliation, and that this conspiracy continued through September 2009, when Defendant Gray interfered with the finalization of the Fahs Contract. (Dkt. No. 1, ¶¶ 67, 69, 72-74.)

As an initial matter, the Court notes that the only conduct alleged in Plaintiff's Complaint to have occurred within the limitations period was performed by Defendant Gray. As a result, each Defendant, other than Defendant Gray, can remain a Defendant in this action only through Plaintiff's conspiracy claim involving Defendant Gray. Accordingly, the Court must consider (1) the statute of limitations on Plaintiff's conspiracy claim, and (2) the point in time in which the statute of limitations began to accrue on Plaintiff's conspiracy claim.

As with any other claim brought under Section 1983, the statute of limitations on a civil conspiracy claim is three years. *Poux v. County of Suffolk*, 09-CV-3081, 2010 WL 1849279, at *8 (E.D.N.Y. May 4, 2010). "[T]he cause of action accrues and the statute of limitations begins to run from the time of commission of the overt act alleged to have caused damages." *Chodos v. Federal Bureau of Investigation*, 559 F. Supp. 69, 74 (S.D.N.Y. 1982), *aff'd*, 697 F.2d 289 (2d Cir. 1982); *see also Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980) (holding that the statute of limitations accrues at the time of the wrongful act and that the existence of a conspiracy does not postpone the accrual of causes of action arising out of the conspirators' separate wrongs); *Afshar v. Procon Inc.*, 442 F. Supp. 887, 891 (S.D.N.Y. 1977), *aff'd*, 580 F.2d

1044 (2d Cir. 1978) (holding that the statute of limitations for civil conspiracy claims commences to run upon the commission of the overt act causing damage).  Therefore, the Court rejects the argument that "a cause of action for civil conspiracy accrues only on the date of the last overt act committed by anyone in furtherance of the conspiracy." *Kadar Corp. v. Milbury*, 549 F.2d 230, 235 (1st Cir. 1977) (holding that, where statute of limitations barred any claim pre-1973, "[four] defendants cannot be held liable for acts allegedly committed in 1971 and 1972" based on plaintiff's allegation that certain other defendants committed overt acts post-1972 because "for the post-1972 period, no overt acts specifically implicating these [four] defendants are alleged").

     Here, the statute of limitations on Plaintiff's conspiracy claim against all Defendants began to accrue, at the very latest, in 2005, at which point each Defendant had allegedly taken actions in retaliation for the embarrassment that John Grady experienced in 2003.  Moreover, Plaintiff has failed to allege facts plausibly suggesting that any Defendant, other than Defendant Gray, committed any overt act within the limitations period.  Finally, although Plaintiff alleges that Defendant Gray's actions were carried out as part of an ongoing policy of discrimination, Plaintiff's also alleges that roughly three years lapsed between the time Defendants Van Auken, Farrell, and John Doe 1 through 5 allegedly retaliated against it on the work site and the time Defendant Gray allegedly first interfered with the finalization of the Fahs Contract.  Based on this significant gap in time, the Court rejects Plaintiff's argument that the continuing-violations doctrine renders timely all alleged conspiratorial acts.  *See Smith v. Masterson*, 05-CV-2897, 2006 WL 2883009, at *9 (S.D.N.Y. Sept. 29, 2006) ("In this case, the provision of hearing aids to Smith on December 3, 1997 marks a definitive break in the alleged refusal of DOCS staff to

deny him reasonable accommodations for his hearing impairment. The fact that such conduct allegedly recurred sometime in the year 2000 is not sufficient to establish a continuing violation, and to allow Smith to pursue [conspiracy] claims based on those earlier allegations would defeat the purpose of the three-year statute of limitations."); *Pinaud v. County of Suffolk*, 52 F .3d 1139 (2d Cir. 1995) (rejecting the delayed accrual theory for plaintiff's claims against the county because the plaintiff knew about or at least had reason to know about any policy or custom then alleged given that he encountered the underlying acts that were the basis of the alleged policy years earlier).

As a result, the Court concludes that, to the extent Plaintiff's conspiracy claim is asserted against any Defendant other than Defendant Gray, it is barred by the statute of limitations. The Court would only add that, because Defendants' motion to dismiss is premised entirely on a statute of limitations argument, the Court declines to *sua sponte* analyze whether Plaintiff's conspiracy claim based on events occurring within the limitations period plausibly suggests a claim upon which relief can be granted.[6]

---

[6] The Court is mindful of the authority that stands for the proposition that a conspiracy claim brought under 42 U.S.C. § 1983 "does not set forth an independent cause of action." *Clark v. City of Oswego*, 03-CV-0202, 2007 WL 925724, at *7 (N.D.N.Y. Mar. 26, 2007) (Mordue, C.J.); s*ee also Kaplan v. Clear Law City Water Auth*., 794 F.2d 1059, 1065 (5th Cir. 1986) (stating that § 1983 conspiracy is not a claim in itself, but "can furnish the conceptual spring for imputing liability from one to another"); *Landrigan v. City of Warwick*, 628 F.2d 736, 742 (1st Cir. 1980) (stating that § 1983 "[c]onspiracy is merely a mechanism by which to obtain the necessary state action, or to impose liability on one defendant for the acts of the others performed in pursuance of the conspiracy"). However, the Court declines to dismiss Plaintiff's conspiracy claim against Defendant Gray without further briefing from the parties on that claim.

### B.     Nature of Dismissal

As noted in Part III.A. of this Decision and Order, based on the face of the Complaint, certain of Plaintiff's claims are barred by the statute of limitations. However, the dismissal of these claims is without prejudice for the following three reasons: (1) Plaintiff has not yet filed an Amended Complaint in this action; (2) discovery has yet to commence in this relatively new action; and (3) Plaintiff is a civil rights litigant that should be extended a certain amout of special solicitude. *Cf.* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); *Van Buskirk v. The New York Times Co.*, 325 F.3d 87, 91 (2d Cir. 2003) ("[I]t is often appropriate for a district court, when granting a motion to dismiss for failure to state a claim, to give the plaintiff leave to file an amended complaint.").[7]

### C.     Plaintiff's Claim for Punitive Damages

The fourth of Plaintiff's claims alleges that Defendants acted outrageously, with specific intent to deprive Plaintiff of its constitutional rights, and that Plaintiff is therefore entitled to recover punitive damages. A Plaintiff may recover punitive damages "under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). The allegations in Plaintiff's Complaint plausibly suggest that Defendant

---

[7] *See, e.g., Gant to Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995) (explaining that the liberal pleading standard set forth in Fed. R. Civ.P. 12[b][6] "is applied with greater force where the plaintiff alleges civil rights violations"); *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991) (explaining that the liberal pleading standard set forth in Fed. R. Civ.P. 12[b][6] "is to be applied with particular strictness when the plaintiff complains of a civil rights violation"); *Sykes v. James*, 13 F.3d 515, 519 (2d Cir.1993) (explaining that the liberal pleading standard set forth in Fed. R. Civ.P. 12[b][6] "applies with greater force when the complaint is submitted pro se *or* the plaintiff alleges civil rights violations") [emphasis added], *accord*, *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994).

Gray's conduct was motivated by an alleged evil intent: to put Plaintiff out of business. (*See generally* Dkt. No. 1.) As a result, the Court declines to dismiss Plaintiff's claim for punitive damages at this stage of the action.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 13, Attach. 1) is **GRANTED in part** and **DENIED in part** in the following respects:

(1) Plaintiff's equal protection claim against all Defendants, Plaintiff's retaliation claim against Defendant Van Auken, Defendant Farrell, and all of the John Doe Defendants (as they are referenced in the Complaint), and Plaintiff's conspiracy claim against Defendant Van Auken, Defendant Farrell, and all of the John Doe Defendants (as they are referenced in the Complaint) are **DISMISSED without prejudice**; and

(2) Plaintiff's retaliation and conspiracy claims against Defendant Gray survive Defendants' motion to dismiss.

Dated: January 27, 2011
　　　　Syracuse, New York

_____
Hon. Glenn T. Suddaby
U.S. District Judge