UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

FAHS CONSTRUCTION GROUP, INC.,

                Plaintiff,

     -v.-                                           3:10-cv-0129
                                                    (GTS/DEP)
MICHAEL GRAY,

                Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

HINMAN, HOWARD & KATTELL, LLP          ADAM P. HATCH, ESQ.
 Counsel for Plaintiff                               AJBERT J. MILLUS, JR., ESQ.
P.O. Box 5250                                             PATRICK J. MAY, ESQ.
80 Exchange Street
700 Security Mutual Building
Binghamton, NY 13902-5250

HON. ERIC T. SCHNEIDERMAN               LAURA A. SPRAGUE, ESQ.
Attorney General for the State of New York
 Counsel for Defendant
The Capitol
Albany, NY 12224-0341

HON. GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

       Currently before the court, in this civil rights action filed by plaintiff Fahs Construction Group, Inc., ("Plaintiff") against defendant Michael Gray ("Defendant"), is a motion by Defendant to dismiss the Second Amended Complaint or, in the alternative, to stay this action pending resolution of a related case and to stay discovery pending consideration of the current motion. (Dkt. No. 53.) For the reasons set forth below, Defendant's motion to dismiss is granted; Defendant's motions for a stay of this action and a stay of discovery are denied as moot; and the Second Amended Complaint is dismissed with prejudice.

## I. RELEVANT BACKGROUND

### A. Procedural History

Familiarity with the procedural history of this case is assumed in this Memorandum-Decision and Order, which is intended primarily for the review of the parties. *See Fahs Const. Group, Inc. v. Gray*, No. 3:10-CV-0129, 2011 WL 2873532 (N.D.N.Y. Jul. 12, 2012) (motion to dismiss equal protection claim and First Amendment claim against all defendants in their official capacities, as set forth in the amended complaint, is granted); *Fahs Const. Group, Inc. v. Gray*, No. 3:10-CV-0129, 2011 WL 294269 (N.D.N.Y. Jan. 27, 2011) (motion to dismiss complaint granted in part and denied in part and certain claims are dismissed without prejudice). However, the Court will briefly touch on two relevant points regarding the procedural history.

First, it is clear that as a result of the motion practice that has occurred to date, the sole remaining cause of action set forth in the Second Amended Complaint is a claim against Defendant for retaliation under the First Amendment. While that claim was pleaded in both the initial Complaint and First Amended Complaint, it was not until the current motion was filed, over two and a half years after this case was commenced, that Defendant raised the issue of whether Plaintiff's speech is protected by the First Amendment.[1]

---

[1] The sole basis of the motion to dismiss the initial complaint was that Plaintiff's claims, including its First Amendment claim, were barred by the statute of limitations. (*See* Dkt. No. 13-1, at 18-20.) To be sure, in addressing this argument as to the First Amendment claim, this Court found that Plaintiff alleged facts plausibly suggesting that it was engaged in protected activity when it filed claims against the NYSDOT. (*See* Dkt. No. 24, at 13.) The Court did so without in-depth analysis, because the issue of whether Plaintiff's claims to the NYSDOT constituted protected speech was not challenged by Defendant. Accordingly, because the Court's finding in that regard was not essential to the determination of the legal question before it, it is dictum and has no binding effect on the outcome of the current motion. *See National Traffic Service, Inc. v. Fiberweb, Inc.*, No. 08-CV-262, 2012 WL 3822165, at *2. n.15 (W.D.N.Y. Sept. 4, 2012). Even if it was not dictum, the Court could, and would, reconsider that ruling based on the challenge asserted by Defendant on his current motion.

Second, although Defendant seeks a stay of discovery pending resolution of his current motions, he has since sought that same relief before Magistrate Judge David E. Peebles. *(See* Dkt. No. 57.) Magistrate Judge Peebles denied Defendant's motion in that regard, which decision was later affirmed by this Court. (*See* Dkt. No. 63.) For this reason, Defendant's motion for a stay of discovery is denied as moot.

**B.     Plaintiff's Claim**

Generally, Plaintiff's Second Amended Complaint asserts a claim of retaliation under the First Amendment against Defendant in his individual capacity. (*See* Dkt. No. 51.) The Court accepts as true the following allegations of fact from the Second Amended Complaint. Plaintiff contends that Defendant's

> outrageous, discriminatory, and oppressive treatment of [Plaintiff] . . . was in retaliation for [Plaintiff's] claims in connection with [three separate NYSDOT] projects, as well as [Plaintiff's] outspoken resistance to NYSDOT's positions with respect to the claims, and also in retaliation for the use of [a NYSDOT employee's] email in connection with [one of the three named] project[s], which [Plaintiff] used to great advantage in the ultimate settlement of its claims in connection with that project.

(*Id.*, at ¶ 126.) The three referenced NYSDOT projects are identified by Plaintiff as the Lark Dove, Owego and Albany projects.

Regarding the Lark Dove project, Plaintiff makes reference to a claim that was filed, ostensibly to avoid an increase in "quantities for the repair of unsound concrete in the bridge piers[,]" which had been advocated by an unnamed "Construction Supervisor[,]" and which "would have cost [Plaintiff] a significant amount of money." (*Id.*, at ¶ 15.) Plaintiff implies that it was successful on this claim, but that as a result the unnamed "Construction Supervisor harbored a grudge" against it. (*Id.*) Plaintiff undertook phases two and four of the four-phase Lark Dove project in the late 1990s.

3

The Owego project, which involved the reconstruction of a bridge, was awarded to Plaintiff "[p]rior to 2003." (*Id*., at ¶ 16.) Plaintiff asserts that the project "received significant pubic attention and interest." (*Id*., at ¶ 17.) The project involved the construction of a causeway so that Plaintiff could access the bridge. Plaintiff asserts that it "was very concerned about the [causeway's] design and criticized it [but] its requests for a modification of the design . . . were denied." (*Id.*, at ¶ 23.) In December 2001 and again in January 2002, the causeway flooded, and subsequently Plaintiff and NYSDOT argued about which party was at fault. Plaintiff filed a claim, "pursuant to the contract Plans and Specifications, seeking additional compensation in connection with the causeway failure." (*Id.*, at ¶ 30.) The following month, John Grady, head of Claims for NYSDOT, investigated the matter and drafted "an internal email to other NYSDOT personnel largely exonerating [Plaintiff] for the causeway failure." (*Id*., at ¶ 31.)

Throughout 2002 and 2003, Plaintiff filed multiple claims with NYSDOT regarding the causeway failure, seeking additional compensation as well as extensions of time to complete the project. "[B]y December 2002, NYSDOT began to publicly announce that it would be seeking fines from [Plaintiff,]" and shortly thereafter a local newspaper "made a Freedom of Information Law request to NYSDOT seeking [] correspondence between NYSDOT and [Plaintiff]" regarding the project. (*Id*., at ¶ 34.) Around the same time, public officials began to inquire whether Plaintiff would be penalized for the delay in the project. According to Plaintiff, "the delay and the prospect of a fine was of great interest to Owego residents and officials, as well as State officials, and the project was the subject matter of multiple newspaper articles relating to the delays." (*Id*., at ¶ 35.)

Eventually, Plaintiff "presented its claims to the highest levels at NYSDOT." (*Id.*, at ¶ 40.) Plaintiff included a copy of Mr. Grady's email from two years prior, which had been provided to Plaintiff by an unnamed "NYSDOT Inspector." (*Id.*, at ¶¶ 39-40.) Several months later, "[t]he State paid [Plaintiff] approximately $950,000 in resolution of the claims [] to the substantial advantage of [Plaintiff]." (*Id.*, at ¶ 42.)

Shortly before the completion of the Owego project, Plaintiff submitted a bid, which it was ultimately awarded, on the Albany project. The Albany project involved the reconstruction of approximately ten kilometers of the New York State Thruway in the Albany, New York, area. Early on, Plaintiff perceived that the NYSDOT plan for management of the traffic in the project location was unsafe. Plaintiff "engaged a highway safety consultant, at significant expense, to review [the] plan." (*Id.*, at ¶ 67.) The consultant concluded that the plan was unsafe and recommended certain changes to Defendant and the Engineer-in-Charge, Timothy Farrell ("Farrell"), but they refused to consider any revisions on the project. Defendant and Farrell also indicated that, "if they were to agree to lane closures, NYSDOT would be seeking significant rebates from [Plaintiff] because of the anticipated savings . . . [and that,] if there were significant changes to the [maintenance and protection of traffic] Plan and resulting savings, [NYSDOT] might have to re-bid the project." (*Id.*) "As a result . . ., [Plaintiff] did not pursue the matter further." (*Id.*) Plaintiff alleges that throughout the course of the Albany project, Defendant, among others, "prioritized inflicting damage on [Plaintiff] ahead of the safety of the traveling public, the construction workers, and the State workers." (*Id.*) "[A]fter the [project] was complete, and [Plaintiff] pleaded [its] case to [NYSDOT], payment . . . was finally made." (*Id.*)

Plaintiff also alleges that it and others informed Defendant and Farrell that the design of a culvert on the project site was dangerous "because it would force loaded propane trucks to drive

5

through a 230 foot long 'tunnel.'" (*Id.*, at ¶ 68.) Plaintiff was directed to proceed with construction of the culvert as designed.

Plaintiff further argues that as a result of Defendant and Farrell's refusal to consider any revisions to the project, "[Plaintiff's] employees were required to work under extremely dangerous conditions throughout the project[,]" and eventually one of its employees was killed. (*Id.*, at ¶ 69.)

Plaintiff contends generally that "[a]s a result of the treatment [it] received and the resulting disruption of the work, [it] filed a series of numerous claims with [NYSDOT]." (*Id.*, at ¶ 95.) According to Plaintiff, "[t]he cumulative effect of [Defendant's] actions, as well as the actions of [those] acting under [Defendant's] direction and control, was to greatly increase [Plaintiff's] expenses and to subject [Plaintiff] to hundreds of thousands of dollars in liquidated damages . . . ." (*Id.*, at ¶ 96.) "As a result of the many issues arising from the mistreatment that [Plaintiff] suffered at the hands of [NYSDOT] personnel, [Plaintiff] filed 35 claims for approximately $5.4 million for additional expenses . . .." (*Id.*, at ¶ 100.)

**C. Defendant's Motion**

Generally, in support of his motion to dismiss, Defendant argues as follows: (1) "the bulk of the Second Amended Complaint should be dismissed" because it contains allegations that were previously dismissed as they relate to time-barred claims, and that are attributable to non-parties; (2) any of Plaintiff's claims that rely on the actions of others must be dismissed for lack of personal involvement by Defendant; (3) Plaintiff's First Amendment retaliation claim must be dismissed because Plaintiff fails to allege facts plausibly suggesting that its speech was related to a matter of public concern; and (4) the Court should abstain from deciding Plaintiff's First Amendment retaliation claim under the *Pullman* doctrine, *see generally Railroad Commission of*

6

*Texas v. Pullman Company*, 312 U.S. 496, 61 S. Ct. 643 (1941). (*See generally* Dkt. No. 53-1, at 4-17 [Def's. Mem. of Law].) Alternatively, Defendant argues, this Court should stay proceedings in this action pending disposition of the parallel New York Court of Claims action. (*See id.*, at 17-20.) Finally, Defendant seeks a protective order pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure staying discovery in this action pending resolution of the current motion. (*See id.*, at 20.)

Generally, in its response to Defendant's motion, Plaintiff argues as follows: (1) this Court has already decided that Plaintiff sufficiently alleged a continuing First Amendment violation against Defendant and any attempt by Defendant to re-litigate that issue should be barred by the law of the case doctrine; (2) the Court should not dismiss the allegations in the Second Amended Complaint, which Defendant argues are relevant to the previously dismissed Equal Protection claim, because those allegations also support Plaintiff's First Amendment retaliation claim; (3) Plaintiff's allegations that NYSDOT employees acted pursuant to the direction and control of Defendant are not conclusory and support Plaintiff's theory of Defendant's personal involvement in the unlawful retaliation against Plaintiff; (4) the allegations in the Second Amended Complaint sufficiently set forth the elements of Plaintiff's First Amendment retaliation claim, including that Plaintiff's speech was related to a matter of public concern; and (5) the Court should not abstain from deciding this case because, among other reasons, resolution of the pending claim in this action does not depend on an interpretation of an unclear state law. (*See generally* Dkt. No. 54, at 7-20 [Pl.'s Opp'n Mem. of Law].) Generally, in its response to Defendant's alternative motion for a stay of proceedings in this action pending disposition of the parallel New York Court of Claims action, Plaintiff argues that a stay is not appropriate under *Colorado River Water Conservation District v. United States*, 424 U.S. 800,

7

96 S. Ct. 1236 (1976). (*See id.*, at 21-23.) Finally, in response to Defendant's motion for a stay of discovery, Plaintiff argues that such a motion is more properly brought before the Magistrate Judge assigned to this case, and that in any event, there is no legal basis for a stay of discovery. (*See id.*, at 23-24.)

Generally, in reply to Plaintiff's response, Defendant asserts the following arguments: (1) Plaintiff misunderstands the law applicable to the continuing violation doctrine, which does not permit suit for every action attributable to Defendant; (2) Plaintiff has failed to provide any support for the imputation of non-party conduct to Defendant; (3) Plaintiff's Second Amended Complaint clearly establishes that its speech was of a private nature; and (4) Plaintiff's Court of Claims action involves claims identical to those alleged in this case, will resolve disputed matters under state law and has significant bearing on the claims in the instant case, therefore necessitating this Court's abstention. (*See generally* Dkt. No. 56, at 1-11 [Def.'s Reply Mem. of Law].)

Because the Court grants Defendant's motion to dismiss the Second Amended Complaint based solely on Plaintiff's failure to plead that its speech was protected as a matter of law, the Court need not, and does not, address Defendant's remaining arguments in support of his motion to dismiss or abstain, or Defendant's arguments in support of his alternative motion for a stay of this action.

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Motions to Dismiss for Failure to State Claim

The Court will not recite the well-known legal standard governing dismissals for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) in this Memorandum-Decision and Order, which (again) is intended primarily for review by the parties, but will direct the reader to the

Court's decision in *Wade v. Tiffin Motorhomes, Inc.*, 05-CV-1458, 2009 WL 3629674, at *3-5 (N.D.N.Y. Oct. 27, 2009) (Suddaby, J.), which accurately recites that legal standard.

### B. Legal Standards Governing Plaintiff's Claim

The sole claim alleged by Plaintiff in its Second Amended Complaint is a claim against Defendant for retaliation under the First Amendment. Plaintiff alleges that Defendant violated its right to freedom of speech and its right to petition for the redress of grievances under the First Amendment.[2] Where a public employee is alleging retaliation for the exercise of First Amendment free speech rights, he or she must allege facts plausibly suggesting as follows:

> (1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest, ... (2) he or she suffered an adverse employment action, ... and (3) the speech was at least a substantial or motivating factor in the [adverse employment action] ....

*Morrison v. Johnson*, 429 F.3d 48, 51 (2d Cir. 2005) (quoting *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003)). An independent contractor that has a pre-existing commercial relationship with the government, like Defendant here, is similarly protected from adverse employment actions in retaliation for First Amendment protected speech. *See Housing Works, Inc. v. Guiliani*, 56 F. App'x 530, 532, (2d Cir. 2003) (citing *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 685, 116 S. Ct. 2342 (1996)).

Speech addresses a matter of public concern when it may "be fairly considered as relating to any matter of political, social, or other concern to the community." *Jackler v. Byrne*, 658 F.3d

---

[2] The Supreme Court recently held that the framework used to govern Speech Clause claims by public employees will also apply to claims under the Petition Clause. *See Borough of Duryea v. Guarnieri*, — U.S. —, —, 131 S. Ct. 2488, 2500-01 (2011). Accordingly, for the sake of simplicity, the Court refers to Plaintiff's First Amendment claim going forward solely as a Speech Clause claim.

9

225, 236 (2d Cir. 2011) (quoting *Connick v. Myers*, 461 U.S. 138, 146, 103 S. Ct. 1684 (1983)). Nonetheless, "[s]peech that, although touching on a topic of general importance, primarily concerns an issue that is 'personal in nature and generally related to [the speaker's] own situation,' such as his or her assignments, promotion, or salary, does not address matters of public concern." *Jackler*, 658 F.3d at 236 (quoting *Ezekwo v. NYC Health & Hosp. Corp.*, 940 F.2d 775, 781 (2d Cir. 1991), *cert. denied*, 502 U.S. 1013, 112 S. Ct. 657 (1991)). *See also Tiltti v. Wiese*, 155 F.3d 596, 602 (2d Cir. 1998).

The issue of whether speech addresses a matter of public concern, while fact-intensive, is a legal question for the court to decide, after examining the "content, form and context" of the speech at issue. *See Jackler*, 658 F.3d at 235 (2d Cir. 2011) (citing *Connick*, 461 U.S. at 147-148, & n.7, 103 S. Ct. 1684).

### III. ANALYSIS

#### A. Whether Plaintiff's Second Amended Complaint Properly States a Claim for First Amendment Retaliation

As stated in Part I.C. of this Memorandum-Decision and Order, Defendant seeks dismissal of Plaintiff's First Amendment retaliation claim because Plaintiff failed to allege facts plausibly suggesting that its speech was protected by the First Amendment. After carefully considering the matter, the Court agrees, generally for the reasons stated by Defendant in its memorandum of law in chief and its reply memorandum of law. (Dkt. Nos. 53-1, at 11-12 and 56, at 4-6.) The Court would add the following analysis.

In order to determine whether, as a matter of law, Plaintiff's speech in this case addresses a matter of public concern, the Court must examine its "content, form and context." *Connick*, 461 U.S. at 147-148, 103 S. Ct. at 1690. The speech at issue is identified by Plaintiff in its

Second Amended Complaint as (1) its claims in connection with the Lark Dove, Owego and Albany projects, (2) its outspoken resistance to NYSDOT's positions with respect to those claims, and (3) the use of Mr. Grady's email in connection with its claims regarding the causeway failure during the Owego project, which "[Plaintiff] used to great advantage in the ultimate settlement of its claims in connection with that project." (Dkt. No. 51, at ¶ 126.)

The claims, and Plaintiff's actions and efforts in pursuance of the claims, stem from its disagreements with NYSDOT regarding payment for work done on public roadway construction projects, as well as extensions of time to complete those projects. Plaintiff argues that "the timely completion of construction projects and the question of who should be responsible for the costs associated with the delays – the contractor or the taxpayers[,]" are "matters of high public importance." (Dkt. No. 54, at 16 [Pl.'s Mem. of Law].) The Court does not disagree. The Supreme Court has observed that "public concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication." *City of San Diego v. Roe*, 543 U.S. 77, 83-84, 125 S. Ct. 521, 525-526 (2004). Certainly, the public values access to its roadways and is concerned about the costs associated with their construction and maintenance. Here, in fact, Plaintiff asserts that the Owego project in particular "received significant pubic attention and interest." (Dkt. No. 51, at ¶ 17.) This does not end the Court's inquiry, however. While the subject of the speech may be related to a matter of public interest, the actual content of the speech takes the form of Plaintiff's claims, including its actions and efforts in pursuance of those claims, seeking compensation as well as additional time to complete the road construction projects.

When a public employee (or independent contractor) speaks not as a citizen upon matters of public concern, but instead as an employee or contractor upon matters only of personal interest, the First Amendment does not protect that speech. *See Ezekwo*, 940 F.2d at 781 (citing *Connick*, 461 U.S. at 147, 103 S. Ct. at 1690). Here, as the Second Amended Complaint makes clear, Plaintiff's claims were made, pursuant to the Plans and Specifications of its contracts with NYSDOT, for the purpose of seeking additional compensation as well as extensions of time to complete the projects, matters which are personal to Plaintiff in its role as an independent contractor that is protecting its rights under an agreement with NYSDOT.

Moreover, the Second Amended Complaint also makes clear that Plaintiff's motive in pursuing its claims was primarily financial. To be sure, while Defendant maintains that Plaintiff's motive is dispositive of the Court's analysis here, binding case law does not support that assertion. *See Sousa v. Roque*, 578 F.3d 164, 173 (2d Cir. 2009) ("To the extent that our precedents have been less than clear, we reaffirm today . . . [that] a speaker's motive is not dispositive in determining whether his or her speech addresses a matter of public concern."). Nonetheless, while not dispositive or conclusive, Plaintiff's motive is still a factor that may be considered by the Court in determining whether its claims are speech which addresses a matter of public concern. *See Sousa*, 578 F.3d at 175.

Here, Plaintiff's motive is a factor that weighs against its assertion that its speech addressed a matter of public concern. It is clear from the allegations in the Second Amended Complaint (which describe the content, form and context of Plaintiff's claims) that Plaintiff sought financial compensation only, and was not using the claims process as a way to call attention to matters of public concern. For example, its claims related to the Lark Dove project

were made in order to avoid the purchase of additional quantities of materials, which purchase was advocated by a NYSDOT employee, and which "would have cost [Plaintiff] a significant amount of money." (Dkt. No. 51, at ¶ 15 [Second Amended Complaint].) Likewise, Plaintiff's claims regarding the causeway failure on the Owego project were filed in order to gain additional compensation, and were resolved to Plaintiff's "substantial advantage" when NYSDOT paid it $950,000. (*Id.*, at ¶¶ 30, 42.) Finally, and most significantly, despite its alleged safety concerns regarding NYSDOT's traffic management plan on the Albany project, Plaintiff "did not pursue the matter further" after Defendant indicated the possibility that NYSDOT would seek rebates from Plaintiff or re-bid the project as a result of Plaintiff's requested lane closures. (*Id.*, at ¶ 67.) Instead, Plaintiff sought approximately $5.4 million in additional compensation under the Plans and Specifications for the Albany project. (*See id.* at ¶¶ 67, 68, 95, 100. Thus, it is clear that Plaintiff's primary, if not sole motive in filing and pursuing claims with NYSDOT was to receive additional compensation.

Further, the form of Plaintiff's speech warrants some discussion because it, too, weighs against a finding that Plaintiff's claims, and its actions in pursuance of those claims, addressed a matter of public concern. Plaintiff argues that the private nature of its speech does not detract from its status as protected under the First Amendment. Plaintiff further cites *Glover v. Mabrey*, 384 F. App'x 763 (10th Cir. 2010), in support of its argument that its claims activity is protected by the First Amendment. (*See* Dkt. No. 54, at 16 [Pl.'s Mem. of Law]) (citing *Glover v. Mabrey*, 384 F. App'x 763 (10th Cir. 2010)). However, in *Glover*, the contractor and the state transportation department engaged in a contentious dispute in the media regarding what the contractor alleged was the government's faulty highway design. *See Glover*, 384 F. App'x at 766, 769-70. Here, there is no allegation that Plaintiff spoke publicly about NYSDOT's poor

13

designs or safety issues, in a manner available to citizens generally, as did the contractor in *Glover*.[3] Instead, Plaintiff filed claims seeking compensation directly with NYSDOT under the Plans and Specifications of the contracts governing the projects at issue. To the extent that Plaintiff's speech is presented in such a way that "there is no relevant citizen analogue," its manner of delivery is relevant to whether it is protected or not. *See Weintraub v. Bd . of Educ. of City Sch. Dist. of City of New York*, 593 F.3d 196, 203 (2d Cir. 2010) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 423, 126 S. Ct. 1951 (2006)). In *Weintraub*, the Court concluded that, where an employee voiced his grievance by using an internal communication pursuant to an existing dispute-resolution policy established by his employer (rather than through channels available to citizens generally), the employee's speech retained no possibility of constitutional protection. *See Weintraub*, 493 F.3d at 204. Similarly, Plaintiff's claims here were made pursuant to an existing dispute-resolution policy outlined by the Plans and Specifications of its contracts with NYSDOT, rather than through channels available to citizens generally, such as by use of the media, as did the contractor in *Glover*. *See Glover*, 384 F. App'x at 766.

---

[3] Here, regarding the Owego project, while Plaintiff alleges that it was concerned about, and criticized, NYSDOT's design for the causeway, its claims were made after the causeway failed in order to seek additional compensation in connection therewith. Granted, Plaintiff alleges that (1) the Owego projects received significant public attention and interest, (2) NYSDOT publicly announced that it would seek fines from Plaintiff regarding the causeway failure, and (3) a local newspaper sought correspondence between Plaintiff and NYSDOT regarding the project. However, Plaintiff never alleges that he complained publicly about the causeway design or that his claims related in any way to the causeway design. Instead, Plaintiff's claims regarding the Owego project were solely related to Plaintiff obtaining additional compensation from NYSDOT and additional time to complete the project.

Plaintiff similarly contends that, early on in the Albany project, it perceived that NYSDOT's plan for management of traffic was unsafe. Plaintiff alleges that it obtained the opinion and recommendation of a highway safety consultant, which was rejected by NYSDOT. Plaintiff admits that it did not pursue the matter further, after Defendant indicated that, if NYSDOT was to agree to lane closures, it would be seeking a rebate from Plaintiff, and might have to re-bid the project. Plaintiff eventually filed claims with NYSDOT seeking approximately $5.4 million for additional expenses.

In sum, the content, form and context of Plaintiff's speech, as alleged, warrants this Court's conclusion that Plaintiff's claims and its actions in furtherance of those claims were not akin to speech by a citizen upon matters of public concern, but rather were speech made by an employee or contractor upon matters only of personal interest, which is not protected by the First Amendment. Accordingly, the Second Amended Complaint fails to allege facts plausibly suggesting that Plaintiff's claims, and its efforts in furtherance of those claims, addressed a matter of public concern. Therefore, because Plaintiff fails to state a claim upon which relief may be granted, its Second Amended Complaint is dismissed with prejudice. The Court denies the remainder of Defendant's motions as moot.

**ACCORDINGLY,** it is

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 53) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion to abstain, or alternatively, for a stay (Dkt. No. 53) is **DENIED** as **MOOT**; and it is further

**ORDERED** that Defendant's motion for a stay of discovery (Dkt. No. 53) is **DENIED** as **MOOT**; and it is further

**ORDERED** that Plaintiff's Second Amended Complaint (Dkt. No. 51) is **DISMISSED with prejudice**; and it is further

**ORDERED** that the Clerk of the Court is directed to enter judgment in favor of the defendant and close this case accordingly.

DATED: December 7, 2012
Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge